On my own behalf, I think you've done a great job representing this man throughout this case, and personally I want to thank you for that effort. Have you decided how you're going to use your time? We're going to divide it up evenly, five minutes and five minutes. Angela Kruger, Federal Defenders of San Diego, on behalf of... And you're going to go fast, right? Slow down a little bit. On behalf of Mr. Vargas-Maya, the question here is whether or not the district court had the jurisdiction to revoke Mr. Vargas' supervised release. And because the district court did not have jurisdiction, I would ask this court to vacate and remand so that my client can be terminated from his supervised release. The delayed revocation statute has two requirements. The first requirement is that a warrant must be issued within the supervised release term. Congress deliberately chose the word warrant, and warrant has a loaded meaning. The Fourth Amendment clearly and unequivocally provides no warrant shall issue but upon probable cause and supported by oath or affirmation. Congress uses that word. It's not something, it's not a question of whether or not a warrant must be issued, because Congress is the one that said a warrant must be issued. And that makes sense, because when a delayed revocation proceeding applies, a person is no longer on supervised release, and he does have all the constitutional protections that he would as a normal citizen. And that's what makes the government's cases that they recently cited in their June 7th, 28th jail. Kennedy, did you say that again? He's no longer on supervised release? Correct. Not when the warrant. I'm sorry? When the warrant issues, he's on supervised release. That is correct. However, it is anticipated if the delayed revocation proceeding applies that he would no longer be on supervised release. Right. But what does that got to do with anything? The fact is the issue is what happens at the time of the warrant, that the warrant is a predicate to invoking the authority post-termination to make an adjudication. That is correct. However, we're talking about a jurisdictional statute where the district. I understand what we're talking about, but I still don't understand why we jump ahead. The status of the person, in fact, contemplated and demanded by the jurisdictional statute is that the person still be on supervised release. Otherwise, there's no issue at all. They can't be arrested, period. Well, the person, however, a person. There wouldn't be any jurisdiction in any event if the warrant was obtained after the end. When the warrant is issued, the person is on supervised release. Correct. However, we're not talking about whether or not as a matter of law the arrest itself would violate the supervised release or would violate the Fourth Amendment. What we're talking about, what is the predicate to extend the district court's limited jurisdiction to re-imprison him when supervised release is over? Right. If you were to hold that a warrant can be issued based on less than probable cause, you are threatening to create a statute or interpret a statute that conflicts with the Fourth Amendment, because Congress is not. Well, this doesn't say less than probable. What this isn't about probable cause here is that it's about whether it was sworn under oath. That's true. I mean, it is. Does 3606 require that it be with probable cause? Yes. Well, so we're not, nothing we would decide here, as I understand it, would change the probable cause requirement. The issue is whether it has to be under oath. That is correct. And what you're saying is warrant or summons means Congress intended to import the Fourth Amendment into it. Before Congress wrote this statute and codified it, were these warrants or these prevent, whatever they're called, I forget what they're called. Whatever they were called at the time, they were not issued under oath. Isn't that correct? Not so far as I'm aware. Right. So what you're saying is that Congress, by this statute, heightened the requirement in order to do this. And we have to import that intent through the words warrant and summons. Correct. Congress could have said the filing of a probation petition is sufficient to extend the discord. But then it went on and says a warrant or summons has been issued on the basis of an allegation of such a violation. Correct. Which means that no ---- Say a sworn allegation. It's what it's talking about is the nexus between the warrant itself and what probable cause must show. The probable cause must show that there has been an allegation of a violation. However, you, the Fourth Amendment cannot be clear. No warrant shall issue but upon probable cause and sworn under oath. That is, that preexists the statute. What about the alternative in the statute of issuing a summons? No summons was issued in this case. But the statute provides for that alternative. If a summons had been issued, would that be sufficient to give the court jurisdiction? Correct. However ---- Summons can issue. That can issue without a sworn affidavit, right? No, not correct. Under the rules of criminal procedure, a summons must be accompanied by a sworn affidavit. Well, that's a certain kind of summons. That's not the supervised release summons. But, well, there's no such thing as a supervised release summons. The summons ---- Remember, it's in the statute. Well, but it doesn't provide for the issuance of any sort of summons. The only statutes that provide for the issuance of summons are ---- So you're saying that ---- ---- criminal procedure. Well, you're saying that rule, then, should be applied to the supervised release procedure? The summons rule. Well, yes, because ---- As well as the warrant rule. That is correct. To interpret the statute in any other way would create a problem and under the rule of constitutional doubt. All right. Your side has four and a half minutes left. I know. I'm going to ---- Thank you, Ms. Kruger. Thank you. Good morning. Elizabeth Barros on behalf of Mr. Gutierrez. Assuming a valid warrant is issued prior to the expiration of a defendant's term of supervised release, Section 3583i requires that the warrant be expired and executed within a reasonably necessary period of time in order for the court to retain jurisdiction. Basic rules of statutory construction require that the meaning be given to every word in a statute. In contrast to the language in Rule 32.1 and the Court's jurisprudence prior to the enactment of 3583i, Congress specifically used the word necessary, the term necessary, when it enacted Section 3583i. And in Garrett, this Court made clear that a reasonable delay is different from a reasonably necessary delay. And the requirement under 3583i is that the government has the burden of showing that the delay is reasonably necessary. The delay measured from when? The delay measured from the expiration of the term of supervised release. Okay. So we're looking at what was the date, the 25th? The warrant was issued on the 25th and Mr. Gutierrez's supervised release terminated or would terminate on the 28th. 28th. So it's the delay. We're looking at the delay from the 28th to the, what, November arraignment and then the December adjudication? That's correct. Okay. Now, how do you work, what do we do with the period of delay, if you will, in July 25th? What's that relevant to? The warrant wasn't executed until November. So the delay in executing the warrant was during a period of? So you're just looking at the delay. You don't have to go back and look in the fact that the warrant was actually, that there was all the delay in getting the warrant, you know, when you got the DUI and all of that. You're not focused on that. In this case, I don't believe, no, I'm not focusing on that delay. All right. Here, there was no necessity whatsoever. Mr. Gutierrez reported his violation to his probation officer timely. He offered to self-surrender on numerous occasions. He maintained constant contact with his probation officer. I take it from the way you're focusing your argument that it's your view that the, that you have to look at the delay attendant upon this particular case, not on problems that the marshal's office is having, being understaffed or having too many warrants to serve. You have to look at this individual, his case, and what's reasonably necessary to adjudicate his case. That's correct. That's what's required under Section 3583i. And as the government conceded below, the government did not do anything in order to execute the warrant against him. They didn't notify the marshals in the Eastern District. No one even notified Mr. Gutierrez that there was a warrant outstanding, even though he had repeatedly requested that if a warrant were issued, that he be able to self-surrender. The district court noted that Mr. Gutierrez was not on the land, so to speak, but was easily locatable. He continued to live and work at the same place. This is a person that had been on supervised release for almost three years without any violations. And a week before his supervised release term were to end, the arrest occurred shortly before. But during that period of time, he had been living and working at the same place, and he was living and working at the same place afterwards as well. And I will reserve the remainder at this point for any questions. Okay. Hear from the government. Thank you, Your Honor. May it please the Court. Renee Bunker on behalf of the United States Southern District of California. And I, too, will address the warrant issue and then allow my colleague to pursue. By the way, before I get into that, what's the possibility that either of these cases might become moot before we can decide them? This, I believe the defendant, Vargas Amaya, was released from custody. However, he was also sentenced to an additional term of supervised release, I think, of 24 months, which my quick review of the case law indicated it wasn't moot. So we didn't raise that with regard to defendant Vargas Amaya anyway. This is indeed a case of statutory construction, and the statute is abundantly clear that violation warrants may be issued on the basis of an allegation of a violation. Had Congress, I believe we both – both parties cite Morales-Alejo. And once the text of the statute is clear, giving meaning to every word in the statute, that's the end of the matter. It's not – How does Congress walk around the Fourth Amendment? The context is very important here. The persons as Morrison v. Brewery, as Knight, as Barraza, as a litany of cases, as Schmidt and Garrett make clear, people who are on supervised release, on parole, on probation, are not similarly situated to those who are at large free and not still under a sentence. But the Fourth Amendment is one of the clearest ones we have. No warrant shall issue except. I mean, no room for argument too much on what it says and what it means. Although administrative warrants are routinely issued with less than probable cause. And as Knight makes clear and Morrison v. Brewer, Knight, I believe, is the search case, where certainly people on probation, parole, supervised release may be subject to searches of their homes even without – without a warrant, without probable cause, in that case based on reasonable suspicion. If that's the case, certainly a judge, based on allegations of a probation officer that a violation has occurred, files a petition. Certainly a judge, based on those allegations, as Congress intended. Had Congress wanted to put in probable cause, as they did in Rule 3, or oath or affirmation, as is in Rule 3, or, quote, probable cause, as is in Rule 4, and as in Rule 9, and as in 3604, which I think is what was cited in the reply brief, all of those statutes and rules specifically refer to probable cause and or oath or affirmation. Had Congress wanted, as the district court found, to include those formalities in the supervised release context, it could have done so, and it chose not to. And it makes sense, given the history of the supervised release statute and the scheme of the statutory provisions for supervised release and parole. Congress chose not to, and therefore, it's important to look to cases like – unlike the status of the probationer or supervisee is a salient factor, for sure, and it's important to look to cases like that. And the cases that the defense cite, Coretta, I believe, or Korhage, those individuals were under no criminal sentence at all, and there was some egregious conduct there where officers went to one of the individual's homes and – based on a foreign-sounding name, I believe. The – Garrett makes clear that this violation warrant is a different type of creature, and Schmidt makes clear, the case the district court found most on point, that these warrants are issued pursuant to these petitions for warrant of violation, as are included in the excerpts of record in the warrant. The bench warrant that is issued based on those allegations, as is at SER 4, then puts in the record prior to expiration of the term of supervised release the fact that a violation has occurred and the court is – has filed the warrant. Just one additional point is, the defendant's construction of this statute makes no sense in – for two reasons. The – as I believe Judge Fischer indicated, the fact that the defendant, after the bench warrant has been timely issued, is no longer on supervised release is of no matter at this point, because this statute was intended in part to ensure that people don't slip under the authority of the court and the supervision because they're very successful at evading probation officers and appearing for a court. The defendant's construction of this statute would allow those who are most successful at evading their probation officer and not coming to court to have the greatest protections and these new Fourth Amendment standards. It also doesn't make any sense because under the appellant's construction of this statute, judges would have to be profits because these bench warrants, violation warrants, are routinely issued prior to expiration of the term of supervised release. At that point, judges have no idea which warrants are going to be executed that day, the following day, or which warrants, depending on the resources of the United States law enforcement expediencies, depending on when the supervisee happens to show up to the probation office. The district court, at the time they're signing the warrant, has no idea which warrants will be executed prior to the expired term of supervised release and which ones will be executed after the term expires. Therefore, the judge would be in a position of having to guess and send some probation officers back saying, no, go get a complaint, a formal complaint, I'm going to require you to square this one under oath with an indictment information or complaint, and to somehow do some guesswork and decide that this one's okay, I can issue this one on the basis of an allegation of a violation. To think that Congress would have intended that sort of guesswork is somewhat far-fetched. Roberts. Thank you. May it please the Court. William Cole for the United States. First, to address the Court's question as to mootness, in this particular case, Mr. Gutierrez's custody is to expire on, is set to be released on June 30th of this year. And so that's about three weeks away. A release without any further term of supervised release? That's right, Your Honor. Now, moving on, I want to first correct one incorrect statement made by the defense. This was not a defendant who had made it through his supervised release without previously violating. He had previously violated. It's neither here nor there in this case, but I wanted to make sure the record was clear. He had previously violated. His conditions had been modified to give him a chance at that point, and he was directed to participate in the Community Correction Center. This was his second violation, and this is the one that resulted in the issuance of a warrant. This warrant was issued and executed only a little more than three months after it was issued. It was executed very promptly as warrants go. This warrant, you could say, was still in its infancy. And to suggest that that type of a brief delay in execution would deprive the Court of Jurisdiction would create a brand new, I believe, a brand new right that has not existed before with respect to a right to have a warrant executed immediately, and it would also create a brand new type of burden for district courts. We would now have inquiries in each case as to whether or not the marshals could have conceivably executed the warrant sooner. Well, wait a minute. Wait a minute. Wait a minute. You say relatively quickly. That's a major assumption we're supposed to make. The statute gives jurisdiction to the court on the basis of reasonably necessary, so it isn't as if sort of, well, you know, when we get around to it, three months is fine. How do we know that? I mean, Congress didn't say when reasonable. It said reasonably necessary. And so there's some burden on the government here to move. You know, this person's being yanked back out of civilian life by letting the court continue to have jurisdiction. So what's the reasonable necessary component here that we're supposed to be looking at? Well, Your Honor, I would submit that that is indicated in Garrett. And Garrett, that was a part of the issue. Garrett was talking about somebody who was stuck off in a state prison, and they were saying, look, you know, it's reasonable, reasonably necessary. We'll construe it to say that this guy's over in the state slammer. We're not going to go through all of this foo-for-rah and pull him back. He's not going anywhere. This is a person who is out on the streets, done. And now you're saying, well, you know, we've got – we don't have resources, and therefore, it's okay for us to take three months. Well, Your Honor, I was – That's the standard by which we're applying reasonably necessary here. Well, it's the same standard – well, in Garrett, Garrett says it applies – the purpose of the statute is for reasonable speed of adjudication after the defendant's in Federal custody. That's what Garrett said. Well, that's – right. That was – that was not the facts of Garrett, though. Well – well, in some – in some respects, Your Honor, I would submit that it is, because the facts in Garrett were that – was that the defendant was in State custody, but only a few blocks from the Federal courthouse. So what you're saying, so long as the – so when does Federal custody begin, then? When the warrant is executed. So in other words, it's open-ended. As long as the – if it takes in the Southern District, because of the workload, it takes eight months, a year, to go out – and you're saying this is in its infancy, so I guess that my hypothetical isn't too far-fetched – that because of the pressures on the Southern District, and I don't belittle those pressures, but Congress, it says reasonably necessary. So you're saying, basically, if we take Garrett literally, it makes no difference – and this is what Judge Brezan hypothesized in her dissent – it makes no difference, then, if you take the Federal custody qualifier as binding law. That means it doesn't make any difference how long you delay – that is, the government delays before executing the warrant. It's not until he is actually picked up does the reasonable, necessary delay inquiry even get triggered. And you think that's what Congress had in mind? Your Honor, I would submit that that is the standard, but that's only one position the government takes. I believe that even under a second or third reading of the statute, this is still fine in this case. I would submit that that is – there is still 32.1, which requires reasonableness in adjudication, and there is still the due process rights of a defendant. And so a defendant is protected against arbitrary or capricious acts by the government, and I would submit that there are other standards that would protect against an extremely long delay or just simply arbitrary failure to ever execute the warrant for a long period of time. But this statute, that was not the intent of the statute. This statute was to assure that when somebody is picked up, they are given a prompt adjudication, because that's when they're back in custody. And other cases that Garrett said provide the – I believe Garrett said provide the canvas upon which this Court paints its interpretation of this statute. Those cases like Bartoli and Moody make clear that it's upon arrest, it's upon execution of the warrant, that the liberty interest is suddenly deprived. That's when it matters that you have prompt adjudication. This defendant, he had no liberty deprived. He was living his life for three months. It was when he was arrested that he was to receive prompt adjudication. He received that. But even if that wasn't the reading of the statute, I would indicate then that Garrett nevertheless tells you that the focus of the statute is prompt adjudication after they're brought into Federal custody. It's weighted towards that, and it's certainly a three-month delay would not be deemed unreasonable, even if we look at the period pre-execution. It simply wouldn't be unreasonable. And there is no requirement that probation officers help people get arrested. There's some indication the probation officer – some suggestion by the defense that they should have brought the defendant in or told him there was a warrant outstanding. There's a lot of reasons probation officers don't tell people warrants are outstanding, and there's no requirement. This was a public record. He could have turned himself in if he really wanted to. Thank you, Your Honor. Rebuttal? No rebuttal? All right. Well, if you're going to stand up, I'm going to ask you a question. I'm sorry? If you're going to stand up, then I'm going to ask you a question. And Ms. Bunker mentioned that under Knights, parolee can be subject to, you know, I think Fourth Amendment inclusion on less than probable cause. Why doesn't that concept apply here? The Fourth Amendment has two requirements, a warrant requirement and a reasonable requirement. Knights is interpreting the reasonableness requirement of and what would be unreasonable for a probation officer. Well, why shouldn't that same rationale apply here? Because you're talking about a person in that status, right, who has less rights than, I'll say, the ordinary citizen. I'm not saying that a warrant is necessary to arrest a probationer. Congress is in the statute. And that's the difference. Congress used the word warrant. I just wanted to bring up one point with respect to the administrative search warrants that was brought up for the first time. Yes, go ahead. In the warrant cases that I looked at, and those are the Supreme Court cases, they were dealing with administrative searches based on less than probable cause and without a warrant. In fact, the Supreme Court specifically noted in one of the cases, and since it was brought up now, it is the case that I looked at was Marshall v. Barlows. It's 436 U.S. 307, and that's at 309. No search warrant was required under the Act. And that was the issue in that case was whether or not a warrant had to be issued. What we're dealing with here is Congress's specific inclusion of a warrant requirement rather than a petition requirement. Thank you. Thank you. All right. We thank all counsel for your fine arguments in this case. This case is now submitted for decision. Oh. Next case on the argument calendars. Kronmeier Kronmeier versus the motion picture bond company. Both counsel here. All right. Thank you.
judges: T.G. Nelson, Tashima, Fisher